15970.   BAILEY v. BARRON G. COLLIER INCORPORATED.

As to the misrepresentations which it was alleged induced the signing of
the advertising contract sued upon, the court, under the facts of the
case, did not for any reason assigned err in charging the jury as follows:
"If the defendant had knowledge as to the facts about which the alleged
misrepresentations were made, if made, or if he had equal means of
informing himself with reference to such facts as clients' solicitor,
he would not be entitled to avail himself of that defense, unless some
fraud or artifice was practiced upon him by plaintiff's solicitor to
prevent such inquiry as would have developed the truth or falsity of
such representation."

The verdict in favor of the plaintiff is supported by evidence.

    DECIDED DECEMBER 9, 1924.   REHEARING DENIED JANUARY 13, 1925.

Certiorari; from Bibb superior court—Judge Mathews.   Sep-
tember 15, 1924.

*Jones, Evins, Moore & Powers,* for plaintiff in error.

*Jones, Park & Johnston,* contra.

LUKE, J.   When this case heretofore appeared in this court (*Bar-
ron G. Collier Inc.* v. *Bailey,* 31 *Ga. App.* 197) it was ruled that
one sued upon a contract was competent to testify that he was
induced to sign the contract by the misrepresentation of material
facts, made under circumstances amounting to fraud, without which
misrepresentation he would not have entered into the contract.   On

a new trial the jury found a verdict in favor of the plaintiff. The defendant sued out certiorari. In answering the petition for certiorari the trial judge stated that the evidence adduced upon the trial was as follows: J. H. Bailey testified: that the agent of the plaintiff represented to him that there were 44 cars operated daily on regular schedule by the Macon Railway & Light Company; that on the faith of this statement about the number of cars operated on regular daily schedule he signed the contract upon which the suit was brought; that at that time he made no investigation, but depended upon this representation; that he subsequently discovered that the representations were not true, and that, although the Macon Railway & Light Company had 44 cars for service, there were only 28 in actual daily service; that upon discovery of this fact he canceled his contract and tendered payment in full for advertising on the 28 cars in actual daily service; and that for this reason he did not owe for advertising on 44 cars as provided in the contract. Mr. Williamson, for the plaintiff, testified: "There was 44 cars operated regularly by the Macon Railway & Light Company. All of these cars were carded by Barron G. Collier, and carried the card of J. H. Bailey. All of these 44 cars were subject to regular use, though all of these 44 cars did not run at the same time. There were 34 cars operated regularly every day, and the balance were maintained as extras and for replacements. There is no distinction between cars run regularly every day and those used for replacement purposes. There is such a continuous change of the regular for replacement cars that at times each of the 44 cars are operated on regular daily schedules. It is absolutely necessary for street-railway company to have extra cars for that purpose." Mr. Cannon, for the plaintiff, testified: "When I got Mr. Bailey to sign the contract I did not have but two copies, and these two copies were the only ones shown to Mr. Bailey, and the only two that were signed and are the copies which are in court and the ones that Mr. Bailey signed. They are in the same condition as when signed, no erasures nor changes on either of them. I did not misrepresent any facts to Mr. Bailey. Mr. Bailey had every opportunity to read and did read the contract before signing it. I did not substitute papers on Mr. Bailey, nor did I cover up any papers or practice any trick or artifice which would prevent Mr. Bailey from reading the contract. I did not tell Mr. Bailey that

there were 44 cars operated every day. I told him there were 44 cars in service, and that he had to have about 50 cards, so as to have a few extra ones in case some got soiled or torn. The information I gave Mr. Bailey with reference to the number of cards was absolutely correct."

In the petition for certiorari error was assigned upon the following excerpt from the charge of the court: "If the defendant had knowledge as to the facts about which the alleged misrepresentations were made, if made, or if he had equal means of informing himself with reference to such facts as clients' solicitor, he would not be entitled to avail himself of that defense, unless some fraud or artifice was practiced upon him by plaintiff's solicitor to prevent such inquiry as would have developed the truth or falsity of such representation." In answering this assignment of error the trial judge stated that "this charge was made in connection with the charge on the question of fraud and the various elements and effects of fraud, and is only an isolated part of the entire charge." It was not error to overrule the certiorari. We do not agree with the contention of the plaintiff in error that the charge complained of was contrary to the law of the case as announced in 31 *Ga. App.* 197. The charge of the court was not, for any reason pointed out, and as applied to the pleadings and the evidence adduced upon the trial of the case, erroneous. The evidence was in conflict, and the verdict in favor of the plaintiff has the approval of the trial judge. As to the assignment of error upon the excerpt from the charge of the court, see *Miller* v. *Roberts,* 9 *Ga. App.* 511 (2) (71 S. E. 927).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*